SLIP OPINION

Cite as 2017 Ark. 103

# SUPREME COURT OF ARKANSAS

No. CV–16–824

| | |
|---|---|
| LAKESHIA CHANDLER and JASMINE DAVIS | **Opinion Delivered** March 16, 2017 |
| APPELLANTS | APPEAL FROM THE PHILLIPS COUNTY CIRCUIT COURT [NO. CV-2011-209] |
| V. | |
| WAL-MART STORES INC., L'OREAL USA, INC., AND L'OREAL USA PRODUCTS, INC. | HONORABLE RICHARD L. PROCTOR, JUDGE |
| APPELLEES | <u>DISSENTING OPINION ON DENIAL OF PETITION FOR REVIEW</u>. |

**JOSEPHINE LINKER HART, Justice**

I dissent from the denial of review in this case because it represents a further erosion of a litigant's constitutional right to a jury trial. In the case before us, the court of appeals affirmed a grant of summary judgment where there were clearly disputed facts and matters of witness credibility.

Appellant's complaint averred that thirteen-year-old Jasmine Davis applied Garnier Fructis Sleek and Shine Anti-Frizz Serum ("serum") to her hair and then began to comb her hair with a metal straightening comb, which she had heated on a gas stove. Immediately after she began combing her hair, Davis's head, arms, and upper body became engulfed in flames. The complaint claimed that the serum contains two primary ingredients, cyclopentasiloxane and dimethiconol, which are known to be flammable. Further, the complaint alleged that testing had shown that when a hot comb was used on hair treated

with the serum, the hair began to smoke. Based on the results of the tests, appellants claimed that the product was defective and that appellees had failed to adequately warn consumers about the danger. Appellants asserted claims of strict-product liability, breach of warranty, strict-product-liability failure-to-warn, negligent failure to warn, and intentional infliction of emotional distress.

Appellees answered the complaint with a general denial, but did assert affirmative defenses. In pertinent part, appellees averred that Jasmine Davis had misused the product.

In appellees' motion for summary judgment, they claimed that the serum did not contribute to the incident wherein Davis's hair caught on fire and that appellants could not demonstrate a genuine issue of material fact to the contrary. In support of their summary-judgment motion, appellees attached (1) excerpts from Davis's deposition in which she stated that her hair had caught on fire after approximately one hour of straightening her hair with the hot comb while standing next to an open flame on a gas stove that she had used to periodically reheat the comb; (2) a picture of the comb, which had a charred wooden handle; and (3) excerpts from the deposition of appellants' expert, Dr. Harold Zeliger, stating that he had not seen or inspected the charred comb or the gas stove used by Davis and further stating that he had not performed any independent investigation or tests to support his conclusion that Davis's hair had caught on fire due to the ignition of chemicals in the serum when the metallic portion of the hot comb was applied. However, Dr. Zeliger indicated that he reached his conclusions after conducting online research to locate the Material Safety Data Sheets (MSDSs) for the particular chemicals used in the serum and their

SLIP OPINION

respective ignition characteristics. He but admitted that he did not consider or rule out the alternative possibilities that Davis's hair had caught on fire when it came into direct contact with the open flame on the gas stove or that the wooden handle of the comb contained a spark that had caused her hair to ignite. Appellants also cited the portion of Dr. Zeliger's deposition where he admitted that the two components of the serum, linalool and limonene, that he considered to have low ignition temperatures, were a de minimis amount of the entire product, although he opined that the presence of these two chemicals was "not necessarily" irrelevant to the behavior of the serum as whole. Additionally, they noted that in Dr. Zeliger's deposition, he could not state with scientific certainty that the comb would ignite hair coated with the serum under the conditions described by Davis because he was unable to accurately test this hypothesis.

Also attached to appellees' summary-judgment motion was a report by appellees' expert, Dr. Gregory Haussmann, in which he detailed the results of testing that he had performed to demonstrate that the serum does not cause human hair to ignite when a heated pressing comb is applied under conditions similar to those described by Davis prior to the fire. Appellees further included a report by Dr. Christine Wood, appellees' "human-factor expert," concluding that it was reasonable and appropriate for the serum not to have a combustibility warning and that the directions on the bottle of serum played no causal role in the fire that caused injury to Davis.

In their response to the summary-judgment motion, appellants attached excerpts from the deposition of L'Oreal's vice president of Analytical Chemistry and Microbiology, Dr.

Henry Kalinoski, who acknowledged that the serum contained certain ingredients that could be characterized as hazardous and that the serum could be considered to be combustible with its flash point of 170 degrees. Appellants also attached material from the report and deposition of their expert, Dr. Zeliger, who opined that the serum itself was a combustible product; that some components of the product were combustible and others were flammable; that the serum contained components with low ignition temperatures; that the combustible components of the product can readily ignite when heated to 170 degrees, a temperature readily obtained when either a hair dryer or a hot comb is used on one's hair; that any flammable components of the product increase the potential for fire when the product is exposed to an ignition source; that some components of the product will ignite when subjected to temperatures above the mid-450s and that such temperatures are readily available when a hot comb is used to heat the hair; that it is foreseeable that a hot comb, such as the one used by Davis, would be used in combination with the serum to straighten the hair; that the fire in Davis's hair was caused by the propensity of the serum to ignite when subjected to heat of the magnitude expected from its recommended use; and that L'Oreal had failed to provide any warnings on its label that would alert the user to the flammable, combustible, and ignition potential of the product. In addition, appellants attached to their response the serums label, the officialization-and-safety certificate of the product, and documented complaints of various adverse reactions reported by consumers following use of the serum.

Reduced to its bare essence, there were facts alleged by appellants concerning how

Davis had used the serum supported by the opinion of appellants' that components of the serum are combustible and could be ignited when subjected to temperatures that could be easily obtained when the product is used in the manner described by Davis. The appellees countered these alleged facts with claims by their expert that he could not replicate the catastrophic fire that had injured Davis. This is the classic scenario for the *denial* of summary judgment, or its reversal on appeal. In summary judgment, we must view the facts in the light of the party resisting summary judgment. Accordingly, we must accept as true Davis's account of the accident—that the serum burst into flames when she rand a heated comb through her hair. It is the jury's job to decide whom to believe, not circuit court's.

Likewise, the circuit court, and the court of appeals on review, mishandled the appellees' affirmative defenses. Essentially, the circuit court took a portion of the deposition of appellants' expert, in which he admitted that he did not completely rule out every other possible cause of the fire, and decided that the admission warranted dismissal of the case on summary judgment. Trial lawyers who have actually tried a lawsuit know, or should know, that a line of questioning of an expert witness in which he or she is confronted by other possible theories that he or she likely has not considered is nothing more than an impeachment technique to be used in cross-examination. Again, while these alternative theories may have undermined the *credibility* of Dr. Zeliger, whether to believe him should still remain the province of the jury.

Until 1961 when the General Assembly passed a general summary-judgment statute, summary judgment was extremely limited. David Newbern & John Watkins, *2 Arkansas*

*Civil Practice & Procedure*, § 26:1 (4th ed. 2006). However, from the time the statute was enacted until the late 1990s, summary judgment was considered a "drastic remedy." *Id*. In 1998, this court changed course. *Id*. (citing *Wallace v. Broyles*, 332 Ark. 189, 961 S.W.2d 712 (1998) (Supp. op. on denial of rehearing). The *Broyles* court noted its abandonment of the "drastic remedy" language, calling summary judgment instead "one of the tools in a trial court's efficiency arsenal." *Id*. Nonetheless, the *Broyles* court resisted the kind of deferential review that the court of appeals has apparently undertaken. It reversed a circuit court, stating

> We initially point out the trial court's use of the wrong standard when deciding to grant summary judgment. As discerned from the foregoing findings, the trial court determined there was no evidence upon which reasonable minds could differ[.]

*Broyles*, 331 Ark. at 65, 961 S.W.2d at 714. The *Broyles* court went on to restate the correct standard, which the court of appeals should have applied:

> On review, this court determines if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. This court views the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. Our review focuses not only on the pleadings, but also on the affidavits and other documents filed by the parties.
>
> Significantly, and especially relevant in the present case, the standard to be applied in summary judgment cases is whether there is evidence sufficient to raise a fact issue, rather than evidence sufficient to compel a conclusion on the part of the factfinder.

331 Ark. at 65–66, 961 S.W.2d at 75–76 (citations omitted).

I can see no difference between the standard that the trial court used in *Broyles*—which the supreme court held was prejudicial error—and the standard that was affirmed by the court of appeals in the case at bar. In both cases, the circuit court usurped

the appellants' right to a trial by jury. Accordingly, I dissent from the majority's decision not

to take this case on review.